Thank you, Your Honor. What I'll be doing is reserving about five minutes for rebuttal. Okay. And the clock counts down. Okay. Thank you. Well, I appreciate the opportunity to be here and to be able to discuss the issues that we have. The first thing that I'd like to point out is that this case, the standard that was established, was a case called Ashton v. Nevada. It was written by Judge Markell, and Judge Markell wrote in his brief three times that this is the standard in which he was going to apply in this case. Well, the Ninth Circuit has reversed that decision. So it's our position that the standard in which he has applied has been reversed, and so now there is an error in regards to the standard that he used. Well, we've read that. I'm not sure that the formal articulation of the standard has changed. Judge Markell, according to that panel, misapplied the standard. Right. And that's what the next thing that I'm going to get to is I believe he's misapplied the standard in this case also. For example, let me go through the first issue in which he why he awarded sanctions in the case. You had Pink, Gross, and Mr. and Mrs. Gross organize a company, Blue Pine Group. A dispute arose. After the dispute arose on February 4th, 2009, Corporate Counsel Henry Littenberger held a meeting and a resolution was passed removing Pink and Sweeney. On March 2nd, 2009, Litigation Counsel, then with the remaining two directors, held a meeting and a resolution was passed to file bankruptcy. Now they go out and hire Bankruptcy Counsel. Now the issue that they have is they sanction Bankruptcy Counsel because they say, oh, it was so obvious that he should have known that the case would have been dismissed. But what we found is what he actually did is he misapplied the law. The first grounds that he said why sanctions should not, should have been awarded is he said, quote, he did not have a copy and did not insist on seeing the required Notice shareholders meeting of Blue Pine necessary to remove Pink and Sweeney as directors. First off, in the tab 27, page 875, counsel did insist on seeing it. But what the problem is, is five times opposing counsel argued that it takes two-thirds of the shareholders to remove a director. So Judge Markell says, well, you don't have two-thirds, that's obvious, and so that's why he issued sanctions. But that's not the statute. The statute says two-thirds of the issued and outstanding shares. Let me ask you a different question on shareholders. If you've got four directors, how many directors are required to remove one or more directors? Do you need a majority to remove one or more directors? The answer to that is yes. And Nevada statute basically says that you only need one director. But, no, I understand that. But there were four directors, and I have trouble seeing how two can be a majority sufficient to remove two. Let me go ahead and explain that. First off, in regards to directors, under NRS 78.035, when you file an articles of incorporation, you're to list the resident. You're supposed to name address of either the residence or business of the director and then also that was not done. What happened here is Pink testified that he wanted to create an entity, but he didn't know how the addresses were put on that filing. And because it was the wrong address, it is not a valid filing. So the question, Judge Markell says, this sounds more like a partnership than it is a director. The next thing under 78.050 says neither incorporator nor a director designee in articles become a subscriber or a shareholder. The filing of the articles of incorporation does not itself constitute commencement of a business by the corporation because the statutes need to be followed. So if they're not followed, then there is an issue of fact whether or not they really were a director. Now, Judge Markell also on May 26, 2009, there was a hearing to determine whether or not the bankruptcy should be dismissed. And the issue of the director came up, this exact issue. And Judge Markell said, you know, there's issues of fact here. It's how many directors, who's a director and so on. So if he believes that there are issues of fact, that doesn't give grounds for sanctions. Another thing that needs to be pointed out is under the Nevada statute, there needs to be an acceptance. There was an original corporation meeting that was testified by Pink. Sweeney was not there. Sweeney never participated, never involved, and never has gotten an acceptance. The California litigation. Scalia. Let me make sure I understand. That is to say, even if we did have a corporate form, even if we did have directors, Sweeney had never accepted to become a director? Is that what you're telling me? That's what I'm saying. That is correct. Also, another thing to point out is in the California lawsuit that was filed, counsel said that there were only three directors, Pink, Mr. and Mrs. Gross. It never even mentioned Sweeney. Counsel for Pink said that? You say counsel. Which counsel? Okay. Counsel for Pink. There was a lawsuit that was filed in California. Right. No, no. I'm just trying to figure out when you say counsel, which counsel are you referring  I apologize. And so it was Pink's counsel in that complaint that specifically said there were only three directors. So that shows issues of fact that are disputed. Now. Counsel, before you leave that point, could I just ask? I want to make sure that I'm understanding the record correctly. Sure. And my notes indicate that at the time the bankruptcy petition was filed, that there would have had to be a representation that no officer or director had terminated his or her relationship within the preceding year. So that couldn't have been right, right? Well, it also, the bankruptcy petition is you're supposed to list who the directors were. Right. And the bankruptcy petition only listed two directors, Mr. and Mrs. Gross. Now, what happens is, is when a bankruptcy petition, as the evidence established, the debtor filled out the form. They gave the information to bankruptcy counsel. Bankruptcy counsel then, with the information that he was given, filed it. So at the time, the issue of the removal of Pink and Sweeney was not even an issue and bankruptcy counsel did not know about it. Okay. After the petition was filed. Thank you. So then my follow-up question is, and did I interrupt you, Judge Gould? I. I'm going to wait until you're done with your question. Okay. Thank you. Just quickly then, on March, I think it is the 13th, opposing counsel then, I think, provided by fax articles which would have indicated, if I'm understanding correctly, four directors. So it seems at that point there was certainly a duty of inquiry, but also recognition that the original statement of financial affairs might be wrong, because it certainly within the previous year something changed. Correct. And that's why bankruptcy counsel immediately went out to do his investigation. He checked the Nevada Revised Statutes and found out under 78, 580, that directors can remove. Other directors, or excuse me, can file bankruptcy, plus that under NRS 78, 120, and I think 122, it talks about the power as given to the board of directors. So we know that the bankruptcy could properly be done. The issue is whether or not the removal by the first corporate counsel was done. Now, all these issues of fact, Judge Markell said, we don't know how many directors there are. And so that's why he held the hearing. It was scheduled for May 26th, continued it to June 2nd. Just quickly, one final question before I defer to Judge Gould. Was there any effort made to correct the statement of financial affairs to indicate that something had changed within the last year? There was. But the issue is, is the correction was on hold until they determined exactly what to correct, whether or not it was a removal or not. Because when you file something. I'm sorry. Forgive me for interrupting. I don't know what that means. The correction was on hold. Was anything, to be more precise, my question wasn't a good one, but was anything filed with the bankruptcy court?  Thank you. And let me kind of explain why. What the situation is, when an attorney files something with the court, it is a verification under Rule 11 that the information is true and correct. The issue as to whether or not they were even a director and whether or not it was validly removed or not was an issue, a fact that needed to be determined. And then once that issue was determined, then they would go ahead and make that change. So that's why it wasn't changed right away. Thank you. Well, Mike, the question I had in my mind was really the same one or similar to what Judge Christin asked you. That is, assuming that bankruptcy counsel filing the petition maybe had no reason to know that it wasn't authorized by the whole board because he thought there were two directors, why wasn't he put on notice upon receiving objection from opposing counsel faxing him a copy of the Articles of Incorporation showing four directors? Because obviously two directors can't remove two other directors and then run the company. Thank you. I appreciate the question. The reason why is, number one, the letter that accompanied it said that there was no meeting. Number two, it says that there was no resolution. Bankruptcy counsel actually knew of the meeting, was told about it. Two, they actually had in his hand a copy of the resolution. So he had reason to doubt counsel's letter from the other side. Now in regards to the four directors, once he received that, counsel immediately inquired a corporate counsel and says, what's going on? He received the corporate resolution that removed the two directors. And so based upon that, he would believe that the information presented by opposing counsel was incorrect. Now, he didn't just stop and rely upon that. He went ahead and did further investigation. And that's why Judge Markell had real questions about who was the director, what was the quorum, and that's why he didn't issue sanctions based upon a quorum and what is a director. He issued sanctions based upon the statute that opposing counsel quoted five times that two-thirds shareholders had to remove a director. It was two-thirds of the issued and outstanding. And there were no issued and outstanding shares. So that statute clearly did not apply. And so that was his standard that he used. If there's no further questions, I've got about three minutes left, and I'd like to reserve it for rebuttal. Fine. We'll hear from the other side, and then we'll hear from you again. Thank you. Good morning. This case is a poster child for why Rule 11 is necessary to ensure that practitioners follow the rules. You know, there used to be a Rule 11 in ordinary Federal court. It's still on the books, but it's essentially disappeared. I understand, Your Honor. This is Rule 9-11 in the bankruptcy court. And why is it still alive in the bankruptcy court? Your Honor, for very good reason, to ensure that practitioners conform to the rules of the Federal bankruptcy courts. Is Judge Markell more vigorous in his enforcement of Rule 11 than other bankruptcy judges in this circuit? Your Honor, I don't know all the other bankruptcy judges in this circuit. I know the San Francisco judges. I know some judges in California. What I do know is that Judge Markell took a day and a half to hear evidence about the issues in this case. And at the end of that trial, he had no questions about how many directors there were. He had no questions about what investigation the counsel, Mr. Wincherton, had done or hadn't done. His 19-page opinion documents the evidence that was submitted at trial. And so I can't answer the Court's question about is he more vigorous. I can't answer the question that what he did complied with Rule 9011's procedural requirements, and what he documented was an abuse of Rule 9011. Did that answer the Court's question? Yes, Your Honor. Okay. Already, the Court has asked a number of questions about the essential issue in this case. Was there ever authorization for filing the bankruptcy? Judge Markell did not have a problem with that at the motion to dismiss. Counsel indicates that there were some potential issues of fact. Indeed, at one hearing on May 26th, Judge Markell indicated there are credibility issues here. But when Humatex counsel explained to the judge, take any of the positions that the grosses are presenting to the Court. There are credibility issues because they're presenting a number of different factual claims. Take any of them, and there still wasn't authorization for the filing. Excuse me. Go ahead. I've interrupted you. Counsel, I'd like you to assume for these next questions that opposing counsel was wrong and he didn't have authorization to file for bankruptcy. The bankruptcy judge twice faulted him for unreasonably relying on a litigator, Ursfeld. But he testified a couple of pages later in the transcript that he also contacted corporate counsel and was reassured that the directors had been properly removed. And I don't see that the bankruptcy counsel ever, forgive me, that the bankruptcy judge ever recognized that in his order. Have I missed it? During the hearing, he did recognize that, Your Honor. Not in his order, though. I agree, Your Honor. During the hearing, he recognized that there was a comment. Now, Mr. Winterton, during the hearing, referred to Hannah Ursfeld as corporate counsel as well. But he did specifically refer to Mr. Lichtenberger. He sure did. And so my question is, if the bankruptcy – it reads to me like the bankruptcy judge was relying on that in large measure for finding that opposing counsel acted unreasonably. What the bankruptcy judge said is, where is Mr. Lichtenberger? If he has favorable evidence for you, where is he? He's a Las Vegas attorney. You could subpoena him, and he's not here. Well, but I'm – maybe that's true at the time of the hearing. But nevertheless, my question, and I think I'm getting the answer, is that the court didn't acknowledge that his testimony, in fact, was that he had relied on corporate counsel as well. Your Honor, you're exactly correct. The opinion, the memorandum doesn't say that. Now, of course, an attorney can't rely on other attorneys. Yes. Under Rule 9011. We cited – Yes. I've read that, and I appreciate that. Your time is so limited. I'm just going to scoot along to my next question, if I could. Please. The order also indicates at one point that he's being sanctioned not for making the mistake, but for later advocating, you know, for continuing to advocate that it was a correct decision. But I'm concerned that I have inconsistent indications from the order about where he draws that line, because on one page he indicates that the counsel knew absolutely – I think this is in footnote 9 – that Winterton had knowledge he was not authorized to file no later than April 15th, but on page 12 of the same order, he indicates that Mr. Winterton is responsible for all actions taken by opposing party after March 13th. So which is it? Both. And thank you, Your Honor, for pointing this out. The footnote says actual knowledge, because his client testified there were four directors at the 341 meeting on April 15th. Right.  Meaning his client had been untruthful with him. Yes. Or at least had withheld that information as the implication from the order. Absolutely correct. But what the Court said on the next page, page 12, was the fact and the basis of his opinion, which was as of April – March 13th, he had emailed to him a copy of the Articles of Incorporation, which listed four directors. So he was on notice with documents. The Court emphasizes how Mr. Winterton didn't ever do anything other than talk to attorneys and perhaps look at Nevada statutes before he filed the bankruptcy petition. What's he supposed to do after the March 13th facts? He checked with corporate counsel. He's verified that. And I don't think the bankruptcy judge acknowledged that. But what else should he have done? Easy, Your Honor. And he should have asked for copies of the corporate resolutions, and he should have looked at them. He got copies of both corporate resolutions. This Court has looked at them. Any. When did he get them? Well, it's debatable because he has no evidence of when he received the authorization to file the bankruptcy, but clearly by March 20th, he received from Hannah Ersfeld the second of the two resolutions, which it was really the first, the February resolution, which removed the two directors, in which two directors voted to remove two directors. So he did this. He started his investigation. He called the attorney and said, I've got a letter from opposing counsel that shows four directors. And then he stopped when he got the two resolutions and did nothing. A cursory review of the law, Your Honor, would have disclosed those resolutions were not authorization to file bankruptcy. They were valid. I'm only going to ask two other discrete questions because I'm taking up all the time and I don't intend to, but it did grab my attention that the last page of the reply makes the, I'll say, unverified assertion that opposing counsel approached Mr. Winterton after all was said and done. And the allegation is that Appley wanted Mr. Winterton to pay $80,000 or he would have the decision published in a paper, and there's a, it goes on. I'm sure you're familiar with it. So my two discrete questions are whether that was ever called to the bankruptcy judge's attention, and my other question is whether there was any bar complaint initiated. Neither, Your Honor. Thank you. And nor is there any verification of the accuracy of that statement. And I took umbrage at it when I read it, Your Honor, but. Well, I hope I indicated in my question that it's an unverified allegation. But you've answered my question. Thank you. You did. And as far as asking questions, that's what I'm here for. We addressed – actually, we didn't address in our brief all the issues, but I believe the bankruptcy appellate court panel and Judge Markell briefed the issues very well in their opinions. Can you address the points that were made with respect to Mr. Sweeney perhaps not actually being a director, both as to whether he accepted being a director and a contention that was made that in the California lawsuit, the plaintiffs said there were three directors. Can you address those two points? Both of them, Your Honor. The complaint filed by me in the California case mentioned only three directors. The reason for that is simple. The Nevada form for articles of incorporation had three of the directors on the first page, and Mr. Sweeney was on the second page. So based on that information, I filed a complaint in California that wasn't accurate. Sounds like somebody ought to come after you. You know, if Humatech and Mr. Pink want to do that, Your Honor, they certainly have the opportunity to do that if that mistake costs them anything. All of the evidence that Mr. ---- At what point was that complaint filed? That is to say, was that complaint filed and available to Mr. Winterton at the time he filed the bankruptcy? Absolutely, Your Honor. So he could have looked at that and said, well, there are only three. I guess, you know, I really can't ignore Mr. Sweeney. Mr. Winterton testified that he was aware there was a lawsuit. He did not ask for a copy of it, nor did he see a copy of it until the motion to dismiss was filed two months later. That's what was his testimony. And it would have been directly contradicted by my March 13 letter, which included the Articles of Incorporation, which that was the documentary evidence of who the directors were. And I apologize, Your Honor, you asked two questions. Yes. The first question was, and of course it's a linked question, we heard from Mr. Sweeney that Mr. Pink insisted that Mr. Sweeney be part of the corporation. There was no testimony at all about any directors' meetings or shareholders' meetings other than one in August of 2008, which apparently Mr. Sweeney didn't attend.   So perhaps Mr. Sweeney didn't travel to Nevada to attend the meeting. But, Your Honor, there's no evidence one way or the other about Mr. Sweeney's participation or lack of participation. Well, it no sounds as though there is. In the one meeting, when the entire board was still intact formally, there's apparently he wasn't there. Right. Which happens. Board members. I understand. But you just told me there's no evidence. And I'm telling you, you just told me what the evidence is. I'm trying to remember if that's under oath and if it was submitted to the trial court. I'm not positive that evidence was submitted to the trial court, Your Honor, so I don't want to cite something in or out of the record. I know it was at the 341 hearing that they said that, that the grosses testified to that. Okay. Now, if, and this is an if rather than a fact, if the resolution removing the two directors or removing Mr. Pink and maybe Mr. Sweeney didn't need to be removed because he wasn't a director, but if the resolution of constituting the two grosses as the only directors was proper, did Mr. Winter didn't do anything wrong? I can't imagine him doing anything wrong. So it all hinges on whether or not the resolution constituting the two grosses were the only two directors.  That's the lynchpin. Yeah. And, of course, the answer to that is very simple under Nevada statutes. 5.80 says that the board has to act, 78.580 says the board has to act through a quorum. And the judge pointed out in that. And how many is a quorum? Well, a four. A quorum, it's a majority under the statute. So under the Nevada statute, a quorum is a majority? Yes, Your Honor. And if Mr. Sweeney was not a director, then two would have been a quorum. If he was not a director. Unfortunately, fortunately for Humatech, all the evidence indicates he was a director. Whether he participated or not, he was a director. Right. And he needed to be removed. If there was some concern about him not serving properly as a director, I want to make sure my citation to the Nevada statute was correct, Your Honor. Now, I've read the letters to Mr. Winterton. There's enough in there to alert him to the problem, but none of the letters say the removal of those two directors was improper. Do you agree with that? I do, Your Honor, and I can explain why. Okay. No one knew about the removal of those two directors. The Grosses apparently did. Your Honor, that's on the Grosses' side. Mr. Winterton sent a letter on April 7th. It's tab 54 of their exhibits. The letter says, I've talked to corporate counsel and all the things were done properly. Did he send copies of the two resolutions that he'd received three weeks earlier? April 7th just happened to be the deadline for the Rule 9011 21-day safe harbor period. He sent a letter saying, I've talked to corporate counsel. Everything's fine. Did he send the resolutions so that Humatex counsel could look at it and say those resolutions aren't proper, they're invalid? Of course not. Had he done that, then there would have been a letter back from counsel. Instead, two days later, after counsel received his April 7th letter on April 13th, the 341 hearing occurred and the Grosses testified there were four directors. So no one knew about the removal of any directors on Humatex's side, because Mr. Winterton didn't tell anyone on the other side about the purported removal until there was an opposition to the motion to dismiss. That was the first Mr. Winterton saw fit to provide those to his opposing counsel. And that's why Judge Markell made the comment in his opinion that the filings were fraught with error. That was just the initial bankruptcy filings that the Court has already pointed out, erroneously said no director has been removed. He did that three times. Mr. Winterton twice, after receipt of the March 13 letter from Humatex counsel, on March 16 and on March 17 filed amended schedules. They weren't amended at all. They were the exact same schedules. But four days after receiving an e-mail with the Articles of Incorporation, which indicated there were four directors, and he was listing two directors in the schedules. Now, the Court said he could rely on Mr. Winterton could rely on corporate counsel. Mr. Winterton could, when he filed the petition. He shouldn't, because Local Rule 1002 required accompanying the petition with an author or with a resolution authorizing bankruptcy. But once he saw that those four directors, he should have, when he filed the amended schedules, corrected the schedules. So that's April 15? No. He saw March 13, he saw the Articles of Incorporation. On March 16 and March 17, the docket is tab 55. But, counsel, I find this really inconsistent, because the acoustics are bad in here, but I think you just said that the bankruptcy judge said he could rely on corporate counsel. The bankruptcy judge said I'm not going to sanction him for filing the bankruptcy. Okay. So after March 13, his testimony at the hearing is that he contacted corporate counsel and was assured that everything was done correctly. So this goes back to my question of when's the start date for the sanction? But what the judge said is the start date is when he got the Articles of Incorporation. That doesn't make sense to me. Your Honor, the reason why. That puts him on a duty of inquiry, but pursuant to the judge's own order, the judge found he was entitled to rely on corporate counsel. What he said was he was entitled to rely on corporate counsel when he was filing the bankruptcy. Once he received the Articles of Incorporation, as was clearly indicated for directors on March 13th, he was under a duty to investigate. The judge said that his investigation of talking to other counsel after that date was inadequate. Thank you. I understand your explanation now. Thank you. Okay. Thanks very much. Thank you, Your Honor. You've saved just over three minutes. Thank you. I'd like to address a couple of questions that the Court had. First off, yes, Judge Markell has been known to be very vigorous in going after attorneys. There's been some decisions in the BAP as well as the district court there overturning a number of his decisions. And my understanding is he's resigned and he's leaving July 10th from the bench nine years out of his bankruptcy term. Next thing is he's going back into academia. He is. I guess Florida State. Yes. Good for him. Next thing is you are correct that Judge Markell does not acknowledge Littenberger at all in his memorandum. Also, the testimony is very clear that Mr. Winterton did have the corporate authorization to file bankruptcy on March 16th, the testimony. There's multiple testimony that that's the date that he received it. And there was also produced on March 20th the corporate resolution that removed the two directors. So the evidence shows that that's when Bankruptcy Council had those two resolutions. Also, oh, talking about the meeting, Mr. Gross did state and testify on tab 26, page 761, that he never saw Sweeney, never spoke to him, knew nothing about him. And so there is testimony out there in regards to what was said concerning that. There is also on the April 7th letter that responded back to opposing counsel. That letter said, we're looking for further documentation. The reason, part of the reason is because if a corporation has bylaws, the bylaws govern. And then if you don't have bylaws, then you apply the Nevada statute. And counsel was looking for additional bylaws. And there was testimony of calling opposing counsel. The last issue that I want to address is in regards to the release that we really haven't talked about. We believe that the release does apply. The release says that everybody's supposed to bear their own costs, but then they turn around and try to get their costs back through a form of sanction. And that's what they apply. So we believe that's a breach of the California settlement. Any disputes regarding whether or not it's covered under the settlement, that should have been done in California. Also, they said Winterton signed on behalf of Mr. Groves. But on the other hand, it dismissed the adversary. But on the other hand, they're saying he had authority and the adversary was dismissed. So you can't not have authority, but yet acknowledge the authority. The last thing, too, is counsel's incorrect in regards to the admissions. Bankruptcy counsel did not represent Mr. Groves until after the bankruptcy was dismissed, because there would be a potential conflict of interest. And Judge Markell is very particular about that. But after it was dismissed, then what happens, bankruptcy counsel could facilitate and come in. So my time is up. Thank you. Thank you very much. Thank you. Thank both sides for their arguments. The Blue Pine Group case is now submitted for decision. Thank you.
judges: Fletcher, Gould, Christen